IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRIC OF FLORIDA
CASE NUMBER:

BRIAN CORBETT,

    Plaintiff,

v.

SAVAGE MARINE STAFFING LLC,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Brian Corbett sues Defendant Savage Marine Staffing, LLC for damages and alleges as follows:

## JURISDCTION AND VENUE

1. This is an action for damages that is brought under the Seaman's Protection Act, 46 U.S.C. § 2114 for safety violations that plaintiff reported, and was thereafter terminated from his job as a merchant seaman.

2. Venue is proper in the Middle District of Florida as all of the events giving rise to these claims occurred in Tampa, Florida.

## PARTIES

3. Plaintiff Brian Corbett ("Corbett") is a resident of Parrish, Florida which is within the Middle District of Florida. Plaintiff is a citizen of the United States and was working as a seaman for the defendant on a United States flagged vessel ALAFIA.

4. Defendant Savage Marine Staffing LLC ("Savage") is an American company (owned by United States citizens) that operates ships, tugs and barges in the Port of Tampa, Florida. Defendant Savage was the owner and operator of the U.S. flagged tank barge ALAFIA

(USCG official number 965439).  Savage's home office is located in Midvale, Utah.

## FACTS

5. Plaintiff commenced employment with defendant as a United States Coast Guard documented, able-bodied seaman in June 2017.

6. Defendant is a ship operating company that is subject to compliance with U.S. Coast Guard and Occupational Safety and Health Administration (OSHA) regulations, specifically those pertaining to confined and enclosed spaces and other dangerous atmospheres in shipboard (merchant shipping) and shipyard employment as found in 29 CFR Part 1915, Subpart B.  These and other relevant and controlling regulations require the defendant to ensure the safe entry procedures, qualified personnel, and functional safety equipment in confined spaces aboard vessels (such as tank spaces).

7. On March 7, 2025, while assigned to a tank barge named ALIFIA undergoing repairs at Gulf Marine Repair in Tampa, Florida, plaintiff observed several safety violations, including:

    a. Improper tank entry procedures, lacking adherence to confined space entry protocols as mandated by OSHA, the U.S. Coast Guard and the defendant's Safety Management System ("SMS") regulations.

    b. Deployment of unqualified personnel into hazardous tank areas without proper training or equipment, including radios.

    c. Non-functional safety equipment necessary for safe operations within confined spaces (the vent hose was split- air was not getting to the ventilator and there was no rescue gear standing by at the tank opening).

    d. There was no attendant outside of the tank to assist with getting the men out of the tank if there was an emergency.  There was no rescue gear that was stationed and

      positioned directly near the tank opening that could be used in an emergency.

   e. There was no "officer in charge" on the scene to be in charge of the operation.

   f. There was no shore-based rescue team in place standing by in case of an emergency in the tank.

   g. There was no dust extraction system in place despite the change in atmosphere.

   h. There was no standard warning signage in place about the tank work being conducted.

   i. The grinding being done in the tank was creating dangerous sparks and were a fire and explosion hazard.

   j. There was no coordination with the shipyard regarding the tank work being done

8. Plaintiff refused to perform his duties as an able-bodied seaman which we to go into the dangerous tank without proper safety protocols in place because he had a reasonable fear and apprehension of serious injury or death to both him and other seamen who were ordered to work in the tank. In the tank the defendant ordered the seaman to use electrical grinders which were throwing off sparks and large amount of dust creating a dangerous atmosphere.

9. On March 7, 2025, plaintiff reported these safety concerns to Safety Compliance Officer Sherry Cowles. She was the "designated person ashore" (DPA) who was to serve and act as a link between shore-based company personnel and shipboard employees for matters relating to the safe operation pf the vessel. Plaintiff detailed the observed violations and emphasized the immediate risks to employee safety. Plaintiff reported the violations and hazards to his employer's DPA in an effort to get the employer to correct the unsafe working conditions involving work in the ALAFIA's tanks. The conditions were not corrected.

10. By reporting these safety concerns, plaintiff engaged in protected activity under the Seaman's Protection Act.

11. On March 7, 2025, Sherry Cowles acknowledged receipt of plaintiff's report and informed plaintiff that she had forwarded the safety complaint to appropriate individuals within the company for further action. The company had a written policy in its "Speak Up" policy brochure which encouraged its employees to report violations of the law, unsafe working conditions or practices, and misuse of company property. The company brochures gave phone numbers of both the team leaders and the legal team to report such company and safety violations. Plaintiff was entitled to report hazards and was fired for doing the very thing he was told to do and encouraged to do to protect himself and other workers.

12. On March 8, 2025, defendant's Marine Director John Morganti contacted plaintiff via telephone expressing frustration and stating, "You messed up my weekend." Morganti was in New York at a wedding.

13. On March 9, 2025, Morganti called plaintiff again, exhibiting increased anger, and informed plaintiff that the company would conduct a full investigation into the reported safety concerns. Plaintiff told Morganti that he was going to report the unsafe working conditions to the U.S. Coast Guard. Morganti instructed plaintiff not to return to work until the investigation was complete and stated he would provide an update by March 16, 2025.

14. On March 10 and 11, 2025, plaintiff contacted defendant's parent company's legal department to express concerns regarding the reported safety violations involving the work inside the tanks of the barge ALAFIA and the subsequent lack of response from management.

15. On March 14, 2025, plaintiff received an email from defendant notifying him of his termination, effective immediately. There was no reason stated for plaintiff's termination.

16. Defendant terminated plaintiff's employment for his protected activity, in violation of the Seaman's Protection Act.

17. Plaintiff formally reported the unsafe conditions to the Secretary of Labor (through OSHA) within 180 days of the violation, filled out requested forms and provided statements to the hearing officer as requested. It has been over 210 days since his complaint was reported to OSHA and no final order has been entered. All conditions precedent to filing this lawsuit have been met.

## COUNT I- COMPENSATORY DAMAGES FOR RETALIATION UNDER THE SEAMAN'S PROTECTION ACT

18. Plaintiff repeats and realleges paragraphs 1 through 17 above as though fully set forth herein.

19. Plaintiff reported violation of workplace safety regulations to defendant's Safety Compliance Officers and the legal department, thereby engaging in protected activity under the Seaman's Protection Act. Plaintiff also advised the marine director of the defendant of the safety hazards and also told him that he was going to report the safety violations and hazards to the U.S. Coast Guard.

20. Defendant retaliated against plaintiff for engaging in protected activity under the Seaman's Protection Act by terminating his employment.

21. Plaintiff was injured and sustained damages by defendant's violations of the Seaman's Protection Act found at 46 U.S.C. § 2114, for which he is entitled to legal and injunctive relief. Plaintiff was earning $530.00 per day and had healthcare benefits paid by his

employer, had life insurance and a 401K employer matching benefit. Plaintiff has not been able to find work as a seaman since this termination from his employer who he worked for since 2017. Plaintiff has also sustained damages in the form of mental anguish for the loss of his job and the inability to find work.

WHERFORE, plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and the Court take jurisdiction over the case.

c) Judgment against defendant in the amount of plaintiff's lost wages, benefits and other compensation.

d) All other compensatory damages allowable by law.

e) All costs, attorney's fees, and reasonable expenses incurred in prosecuting these claims.

f) For mental anguish.

g) For injunctive relief in ordering the defendant to re-hire the plaintiff as a seaman.

h) For such further relief as this Court deems just and equitable.

### COUNT II- CLAIM FOR PUNITIVE DAMAGES FOR RETALIATION UNDER THE SEAMAN'S PROTECTION ACT

Plaintiff repeats and realleges paragraphs 1 through 17 above.

22. Defendant, through its company marine director and other officers, terminated the plaintiff for making a report of the unsafe and hazardous working conditions on the barge ALAFIA.

23. The defendant had actual knowledge of the wrongfulness of the conduct in terminating the plaintiff and terminated him despite knowing that such termination would result in

injury or damage to the plaintiff who is in fact a whistleblower.

24. The defendant acted intentionally and willfully when it terminated the plaintiff for reporting hazardous and unsafe working conditions on the barge ALAFIA.

25. Plaintiff is entitled to punitive damages under the general maritime law of the United States and also 49 U.S.C. § 31105.

26. The defendant terminated the plaintiff after he had followed the company policy as outlined in its Safety Management System (SMS) where he reported:

   a. the unsafe and hazard of working in the tank without proper ventilation,

   b. topside safety gear,

   c. no person standing by topside,

   d. no radios for communication,

   e. untrained and unqualified persons working in the tank, and

   f. no rescue gear stationed topside by the tank at the ready for emergencies in the tank with personnel.

   g. no officer in charge at the scene.

   h. no coordination with the shipyard regarding the tank work being done.

27. Plaintiff demands a jury trial.

WHEREFORE Plaintiff Corbett prays for the Court to enter a judgment in his favor against the defendant Savage for punitive damages, including the costs of prosecuting the action.

/s/ Jacob J. Munch
JACOB J. MUNCH
E-mail: jake@munchandmunch.com
Florida Bar Number 376523
CATHERINE M. SAYLOR

                        E-mail: casey@munchandmunch.com
                        Florida Bar Number 115593
                        MUNCH and MUNCH, P.A.
                        600 South Magnolia Avenue – Suite 325
                        Tampa, Florida 33606
                        Ph: (813) 254-1557 / Fax: (813) 254-5172
                        Counsel for Plaintiff Corbett